634 A.2d 20

**Leroy EPPS**

v.

**STATE of Maryland.**

**No. 35, Sept. Term, 1993.**

Court of Appeals of Maryland.

Dec. 6, 1993.

122

Arthur A. DeLano, Jr., Asst. Public Defender, Stephen E. Harris, Public Defender, all on brief, Baltimore, for petitioner.

David P. Kennedy, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen. of Md., all on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

The defendant in this case was sentenced to 20 years imprisonment, consecutive to sentences theretofore imposed, for projecting a colorless, odorless liquid onto the person and clothing of a correctional officer at the Eastern Correctional Institution (ECI) in Somerset County. He appealed to the Court of Special Appeals, contending the evidence was insufficient to support his conviction of battery, and that the sentence was disproportionate to the crime in violation of the Eighth Amendment to the United States Constitution, the 25th Article of the Maryland Declaration of Rights, and the Maryland common law. The intermediate appellate court affirmed the conviction and sentence, 94 Md.App. 755 and we granted certiorari to consider the defendant's claim of impermissible disproportionality.

I.

On 10 October 1991, Leroy Epps was confined in the segregation unit of the ECI. Correctional Officer Weldon Nelson was walking past a cell occupied only by the defendant

when he felt a liquid substance come into contact with his person.  He described the incident as follows:

> I was on my way past Epps' cell and as I was walking past his door, a liquid substance came out of the side of his door striking me in my left side leg area.  I jumped back and all this liquid was dripping off my arm and everything.  And I went up to the window on Leroy's cell and he was standing inside his cell with his fist clenched beating on the door and he said.  "That's right, you white MF"er, I did it.  Now go get your boys and come in here and get me."

The officer reported the incident to his sergeant by radio, and then continued to the adjoining cell, where he removed a prisoner and escorted him to the exercise area.  When he finished that assignment, Officer Nelson went to a bathroom and "wiped [him]-self off."  He said the liquid was colorless and odorless.  Officer Nelson said he was not injured and did not seek or require medical attention.  Another correctional officer testified that the liquid came from the defendant's cell and that he could see that Officer Nelson was "a little damp on his uniform" and that "you could see that moisture was on his arm."

It is not clear from the record how the defendant was able to project the liquid onto Officer Nelson.  Because the defendant was in a segregated unit, he was not in a conventional cell.  He was enclosed in walls rather than bars, and the door to his cell was solid, with the exception of a fixed window, and a food port that was closed.  The only opening between the interior of the defendant's cell and the area where Officer Nelson was walking was a vertical aperture estimated to be no more than one-and one-half inches wide between the cell door and the jamb of the doorway.  Officer Nelson opined that the liquid was "thrown out the door from a cup or squirt bottle, a plastic bottle with a squirt top on it."[1]  The prosecutor tried

---

1.  The defendant denied throwing or squirting any liquid onto the officer.  He admitted that he had water in the cell, and that he had a cup and plastic squeeze bottles.  He maintained that he could not have

the case on the assumption that the odorless, colorless liquid was water, arguing that conclusion to the court and to the jury.

The jury convicted the defendant of battery, the only charge brought by the State.[2] The trial judge proceeded immediately to sentencing. The State proffered that the defendant had been sentenced in 1979 to serve 17 years for armed robbery; that in 1980 he was sentenced to seven years for an offense the State could not identify, and the State did not know whether the sentence was concurrent or consecutive to the earlier sentence; and that in 1991 he was given a consecutive sentence of 10 years for battery and three years concurrent for possession of a deadly and dangerous weapon with intent to injure. The State pointed out that the 1991 sentence involved an assault on a correctional officer at ECI, in which the defendant struck the officer in the temple with a sharpened piece of coat hanger.

The trial judge imposed a sentence of 20 years, consecutive to existing sentences, stating:

> [I]n view of the fact that he's previously been convicted of the very same thing, [the sentence] will be greater than the sentence that was imposed last time which probably wasn't enough to persuade him that he can't do this. And this court is not going to tolerate this kind of behavior among inmates at the penal institution, at least in this county.

The defendant, through his attorney, filed an application for review of the sentence, alleging that "the sentence imposed was grossly disproportionate to acts constituting the crime for which I was convicted," and that "[t]he State's Attorney, prior to trial, had made a plea offer of 6 months for Battery, consecutive to my current sentence, a sentence more consis-

---

used his plastic bottles to squirt water because they contained lotion and baby oil.

2. The charge was brought in the District Court of Maryland sitting in Somerset County. It was removed to the Circuit Court for Somerset County on defendant's demand for a jury trial.

tent with the acts of which the jury convicted me." A three-judge panel affirmed the sentence, without a hearing.

## II.

In *Thomas v. State*, 333 Md. 84, 634 A.2d 1 (1993), [No. 20, September Term, 1992], filed today, we discussed the constitutional and common law principles relating to required proportionality of sentences. We there pointed out that under the common law of this State, as set forth in *Simms v. State*, 288 Md. 712, 421 A.2d 957 (1980), a sentence for battery could be limited by acquittal or by abandonment of a more serious assault arising out of the same conduct and for which the defendant had been placed in jeopardy. *Thomas*, 333 Md. at 90–91, 634 A.2d at 4. Thus, had Epps been charged in this case with assault with intent to maim, disfigure, or disable,[3] and had he been found not guilty of that offense or had the State abandoned the charge after jeopardy attached, the maximum sentence that could have been imposed for the battery would have been 15 years, which was then the maximum penalty for the aggravated assault. Epps was not charged with the greater offense, however, and consequently the doctrine of *Simms* has no direct application to this case.

We recognized in *Thomas*, however, that the requirement of proportionality is a component of the Eighth Amendment to the United States Constitution and Article 25 of the Maryland Declaration of Rights. Perfect proportionality is not required, but gross disproportionality is not permitted. *Id.* at 93–94, 634 A.2d at 5. We said that:

In order to be unconstitutional, a punishment must be more than very harsh; it must be *grossly* disproportionate. This standard will not be easily met.

*Id.* at 96, 634 A.2d at 6.

In making the threshold comparison of the sentence to the offense, we consider the specific facts of the offense rather than simply the elements of the crime charged. The

---

3. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 386.

common law misdemeanor of battery is generally defined as the "unlawful application of force to the person of another." *Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056 (1991). The type of offenses that fall within the ambit of this crime vary widely and may include kissing without consent, touching or tapping, jostling, and throwing water upon another, *State v. Duckett,* 306 Md. 503, 510–11, 510 A.2d 253 (1986), or at the other end of the spectrum may include a fatal shooting or stabbing of the victim. Judge Moylan, writing for the Court of Special Appeals in *Walker v. State,* 53 Md.App. 171, 193, 452 A.2d 1234 (1982), *cert. denied,* 296 Md. 63 (1983), aptly described the approach to be taken when considering proportionality claims in a case involving assault or battery:

> That an extremely lengthy prison sentence might be disproportionately excessive for most common law assault convictions does not establish, as a bright-line formula, that it would be disproportionately excessive for all common law assault convictions. We measure proportionality not by comparing the sentence with the label of the crime (that the sentence be within legal limits is a legal problem, not a constitutional problem) but by comparing the sentence with the behavior of the criminal and the consequences of his act. As an abstract proposition, no term of years for common law assault is *per se* and universally unconstitutional.

Projecting a relatively small amount of water onto the person of another at waist level or below, and with no great force, although qualifying as criminal conduct if intentionally done, clearly falls at the less serious end of a broad spectrum of conduct proscribed by the common law offense. As the prosecutor conceded in his opening statement to the jury, in other circumstances it would hardly be worthy of a criminal prosecution.

The act becomes worthy of the attention of the criminal courts, and of an appropriate sanction, when the surrounding circumstances are considered. This battery was committed by a prisoner in the state correctional system, and the State has a legitimate interest in maintaining strict discipline and effective security within that system. The factors of

general and special deterrence, always appropriate sentencing considerations, are particularly important here. A trial judge in this situation should properly consider what sentence would effectively deter other prisoners from engaging in similar conduct (general deterrence), and what sentence would effectively persuade this defendant not to assault a correctional officer again (special deterrence). In this case, the issue of special deterrence was of particular concern because this defendant had been given a consecutive sentence of 10 years for an assault on a correctional officer only months before he engaged in this conduct.

Moreover, it is difficult to generate any sympathy for this defendant. His background suggests that he is a dangerous felon, and a difficult prisoner more than willing to foment disorder within the institution. The projecting of this liquid was accompanied by obscene, racial, and provocative language. Inherent in the trial judge's finding of guilt is the conclusion that the defendant lied about his involvement in the incident.

These aggravating circumstances are more than sufficient to support a sentence at the high end of the spectrum of sentences allowed for the particular conduct involved. That spectrum is not, however, as wide as the spectrum of sentences permitted for all batteries, including egregious aggravated assaults. As the State conceded at oral argument, the defendant could not have been convicted of assault with intent to maim, disfigure, or disable on the facts of this case. As we stated earlier, that fact does not impose a limitation or "cap" on the sentence as a matter of law because the defendant was not charged with the aggravated assault. *Thomas*, 333 Md. at 91–92, 634 A.2d at 4; *Johnson v. State*, 310 Md. 681, 531 A.2d 675 (1987). It does, however, help to identify that portion of the broad spectrum of penalties available for the crime of battery in which this case properly falls.

Our comparison of the facts of the offense with the sentence imposed leads to a threshold inference of gross disproportionality. The aggravating factors which are concededly present simply cannot justify a sentence of 20 years imprisonment for

the act of projecting a small amount of water onto the person and clothing of Officer Nelson. There was no injury, nor was there evidence of apprehension of injury. The substance used was neither caustic nor noxious. The defendant did not commit an act which would have justified a conviction for any aggravated assault proscribed by the Maryland legislature.[4] This simply was not an aggravated, brutal, heinous, or potentially dangerous assault.

■ Where, as here, there is a suggestion of gross disproportionality, the reviewing court should next engage in a comparative intra- and inter-jurisdictional analysis of the penalties imposed. In Maryland, 20-year sentences have been sustained only where significant aggravating factors are present. *See Roberts v. Warden*, 242 Md. 459, 219 A.2d 254, *cert. denied*, 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966) (shooting and severe beating of two police officers); *Adair v. State*, 231 Md. 255, 189 A.2d 618 (1963) (defendant broke into apartment of victim with apparent intent to rape, demanded money and food, and when victim screamed, slapped her on each cheek, grabbed her from behind, and assaulted her with a paring knife, causing a laceration of the chest).

The maximum penalties allowed for simple assault and battery in other jurisdictions range from two-and-one-half years in Massachusetts, *see* Mass.Gen.L. ch. 265, § 13A (1992), to three months in jurisdictions such as Michigan, *see* Mich. Comp.Laws §§ 750.81 and 750.504 (1991), Minnesota, *see* Minn.Stat. §§ 609.03 and 609.224 (1987), and Oklahoma, *see* Okla.Stat.Ann. tit. 21 §§ 641, 642, and 644 (1983, 1993 Cum. Supp.). *See Thomas, supra*, 333 Md. at 106–108, 634 A.2d at 11–13, for a list of maximum penalties for simple assault and battery in other states. The maximum penalties assessed for simple assault and/or simple battery against a police officer

---

4. The Maryland legislature has provided that any sentence imposed on an inmate for assault on another inmate or on an employee of a correctional institution must be consecutive and cannot be suspended, but the legislature did not mandate a minimum or maximum sentence. Article 27, § 11E, Md.Code (1957, 1992 Repl.Vol.).

and/or correctional officer range from eight years in Colorado, *see* Colo.Rev.Stat. §§ 18–1–105 and 18–3–203 (1990, 1992 Cum. Supp.), to six months in Louisiana, *see* La.Rev.Stat.Ann. 14:34.2 (West 1986).

In Idaho, simple battery of a correctional officer may be punished by a maximum sentence of five years consecutive imprisonment. Idaho Code § 18–915 (1987 Rev.). Idaho does, however, define aggravated battery to include throwing noxious or destructive liquid on another. This offense is ordinarily punishable by a maximum sentence of 15 years, but that sentence may be doubled if the assault was against a correctional officer. *Id.* at §§ 18–907(d), –908, and –915(b). A list of maximum penalties in various states for simple assaults or batteries committed against police or correctional officers is appended hereto.

The inter- and intra-state analyses validate our initial inference of gross disproportionality, and we shall therefore direct that the sentence be vacated.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE AND REMAND THE CASE FOR RESENTENCING. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY SOMERSET COUNTY.

### APPENDIX
MAXIMUM PENALTIES IN OTHER JURISDICTIONS FOR SIMPLE ASSAULT AND/OR SIMPLE BATTERY AGAINST POLICE OFFICER AND/OR CORRECTIONAL OFFICER

| JURISDICTION | MAXIMUM PENALTY |
| --- | --- |
| Arizona | 1½ years for first offense; 3.75 years for second offense, Ariz.Rev.Stat.Ann. §§ 13–701, 13–702.01, 13–1204 (1956, 1993 Cum.Supp.). |
| Arkansas | 6 years, Ark.Code Ann. §§ 5–13–202 and 5–4–401 (Michie 1987). |
| California | 1 year and/or $2,000, Cal.Penal Code § 243(b) (West 1987, 1993 Cum.Supp.). |
| Colorado | 8 years, Colo.Rev.Stat. §§ 18–1–105 and 18–3–203 (1990, 1992 Cum.Supp.). |

| JURISDICTION | MAXIMUM PENALTY |
|---|---|
| Connecticut | 5 years and/or $5,000, Conn.Gen.Stat. §§ 53a–60, 53a–41, 53a–35a (1958, 1989). |
| District of Columbia | 5 years or $5,000, D.C.Code Ann. § 22–505 (1981, 1989). |
| Georgia | 1 year and/or $5,000, Ga.Code Ann. §§ 16–5–23 and 17–10–4 (1988, 1992). |
| Idaho | 5 years, Idaho Code § 18–915 (1948, 1987). |
| Kansas | 1 year and/or $2,500, Kan.Crim.Code Ann. §§ 21–3413, 21–4502 and 21–4503 (Vernon 1988). |
| Kentucky | 5 years, Ky.Rev.Stat. §§ 508.025 and 532.060 (Michie/Bobbs–Merrill 1973, 1990 Repl.Vol.). |
| Louisiana | 6 months and/or $500, La.Rev.Stat.Ann. 14:34.2 (West 1986). |
| Massachusetts | 2½ years and/or $500, Mass.Gen.L. ch. 265, § 13D (West 1992). |
| Minnesota | 2 years and/or $4,000, Minn.Stat., § 609.2231 (1987, 1993 Cum.Supp.). |
| Mississippi | 5 years and/or $1,000, Miss.Code Ann. § 97–3–7 (1972, 1993 Cum.Supp.). |
| Nebraska | 5 years and/or $10,000, Neb.Rev.Stat. §§ 28–105, 28–309 and 28–310 (1977, 1989 Repl.Vol.). |
| Nevada | 6 years, Nev.Rev.Stat. § 200.481(f) (1967, 1992 Repl.Vol.). |
| New Jersey | 5 years, N.J.Stat.Ann. §§ 2C:12–1, 2C:43–6 (1982, 1993 Cum.Supp.). |
| North Carolina | 2 years, N.C.Gen.Stat. § 14–33 (1986, 1992 Cum.Supp.). |
| North Dakota | 5 years and/or $5,000, N.D.Cent.Code §§ 12.1–17–01 and 12.1–32–01 (1975, 1985 Repl.Vol., 1993 Cum.Supp.). |
| Ohio | 5 years and/or $2,500, Ohio Rev.Code Ann. §§ 2903.13 and 2929.11 (1953, 1993 Repl.Vol.). |
| Oklahoma | 5 years and/or $500, Okla.Stat.Ann. tit. 21, § 649 (West 1983, 1993 Cum.Supp.). |
| Oregon | 1 year, Or.Rev.Stat. §§ 161.615, 161.635, 163.-160 and 163.208 (1991). |
| Utah | 1 year and/or $2,500, Utah Code Ann. § 76–5–102.4, 76–3–204 and 76–3–301 (1953, 1990 Repl. Vol.). |
| Wisconsin | 5 years and/or $10,000, Wis.Stat.Ann. §§ 940.20 and 939.50 (West 1982, 1992 Cum. Supp.). |

CHASANOW, J., in which RODOWSKY, J., joins.

CHASANOW, Judge, dissenting.

I respectfully dissent for the same reasons previously expressed in my dissent in *Thomas v. State*, 333 Md. 84, 634 A.2d 1 (1993), and I hope this Court is not starting down the proverbial slippery slope by its second reversal of a sentence as cruel and unusual punishment.

Following a jury trial, Epps was convicted of common law battery and sentenced to twenty years imprisonment for throwing approximately a cup of liquid on a prison guard. The purpose of the attack was obviously to provoke the guard into entering Epps cell and enable Epps to commit a more violent assault. Immediately after the battery, Officer Nelson testified that Epps "was standing inside his cell with his fist clenched beating on the door and he said: 'That's right, you white MF"er, I did it. Now go get your boys and come in here and get me.'" Less than two months before this battery, Epps was sentenced in the same court to ten years imprisonment for another attack on a guard with a sharp piece of coat hanger. That prior battery, according to the State's brief, was initiated by Epps throwing "water" on the correctional officers.

One reason why appellate courts should be reluctant to reverse sentences imposed by trial judges is the unique ability of trial judges to evaluate the facts and the individuals before the court. The majority may be ignoring this principle and engaging in its own unjustified fact finding. The majority opinion, without foundation, characterizes the liquid which struck Officer Nelson as "water." The liquid was not necessarily colorless or odorless as the majority assumes. Officer Nelson did not testify to any perceptible odor, but he testified that "as far as smelling it or putting my nose in it, I didn't do that." When asked if the liquid dripping from his arm, the side of his shirt and his pant's leg had any color, Officer Nelson replied: "No. I couldn't tell you. I don't know." At sentencing, the State's Attorney argued:

"ECI right now, like some of the other institutions in the state, has a [V.D.] problem. They also have the question of AIDS and these people get substance[s] thrown on them to the point now that the legislature is all fit to pass a law which requires the inmates to take a test that's requested [by] the correctional officers. I think it has to be stopped."

Although he denied the battery, Epps acknowledged that he had a squeeze bottle, and that inmates sometimes put water, urine, and other substances in those bottles and squirt it through the cell doors. He also acknowledged that he had a toilet in his segregation unit cell from which the "water" could have come. There was simply no evidence what the liquid was and whether, if water, it also contained mucus, saliva, urine, or other noxious substances. Most people would find being doused with this unknown liquid cast from a prison cell to be repulsive and offensive to say the least. The battery was also apparently retaliatory because Nelson gave Epps a disciplinary ticket the day before, and it was clearly an attempt to provoke Nelson into coming into Epps's cell so that Epps could perpetrate a more violent attack. A three-judge panel reviewed this sentence pursuant to Maryland Code (1957, 1992 Repl.Vol.), Article 27, §§ 645JA through 645JG, and decided it should not be reduced.

Recognizing that the Court cannot reverse a sentence even though it may be harsh or unreasonable, the majority finds this sentence to be cruel and unusual punishment. The fallacy in this analysis becomes apparent if we imagine the identical sentence being imposed pursuant to a statute. The Eighth Amendment and Maryland's constitutional prohibitions on cruel and unusual punishment are limitations on both legislative and judicial action. *See Ralph v. Warden, Maryland Penitentiary,* 438 F.2d 786, 788–89 (4th Cir.1970), *cert. denied,* 408 U.S. 942, 92 S.Ct. 2846, 2869, 33 L.Ed.2d 766 (1972); *Bartholomey v. State,* 260 Md. 504, 514–16, 273 A.2d 164, 170 (1971), *vacated in part and remanded,* 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972). Judges cannot impose punishments which are cruel and unusual, nor can legislatures mandate

punishments which violate the constitutional prohibition against cruel and unusual punishment. If the sentence in the instant case is, in fact, cruel and unusual punishment, it would be so whether the twenty-year sentence was required by a statute or imposed by a judge exercising discretion. It would certainly seem reasonable for the legislature to enact a statute providing that any inmate who assaults a correctional officer after having been previously convicted of, and sentenced for, assaulting a correctional officer shall be punished by not less than twenty years incarceration.[1] If Epps's conviction and twenty-year sentence had been pursuant to that hypothetical statute, I doubt that the Court would have held that the same twenty-year sentence was cruel and unusual punishment. I believe that the legislature *could* constitutionally enact a statute providing for a twenty-year mandatory prison sentence for any battery (including this battery) committed on a correctional officer by a convict who has previously been convicted and sentenced for a prior battery on a correctional officer. If the legislature could have constitutionally mandated a twenty-year sentence for *this* crime, then the judge could constitutionally impose it.[2] This sentence quite simply was not an unconstitutional punishment.

---

1. Such a statute seems plausible, especially in light of the recently enacted statute providing that any inmate who falsely imprisons a correctional employee is punishable by imprisonment not exceeding thirty years and that the sentence imposed under this section may not be suspended. *See* Maryland Code (1957, 1992 Repl.Vol., 1993 Cum. Supp.), Article 27, § 337A.

2. In Maryland, twenty-year sentences have been repeatedly sustained for the common law crime of assault and battery. *See, e.g., Roberts v. Warden,* 242 Md. 459, 461, 219 A.2d 254, 255, *cert. denied,* 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966); *Adair v. State,* 231 Md. 255, 256, 189 A.2d 618, 619 (1963); *Walker v. State,* 53 Md.App. 171, 195, 452 A.2d 1234, 1246–47 (1982), *cert. denied,* 296 Md. 63 (1983); *Brown v. State,* 38 Md.App. 192, 195–96, 379 A.2d 1231, 1233–34 (1977), *cert. denied,* 282 Md. 730 (1978); *Raley v. State,* 32 Md.App. 515, 526–28, 363 A.2d 261, 268–70, *cert. denied,* 278 Md. 731 (1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977); *Wilkins v. State,* 5 Md.App. 8, 22, 245 A.2d 80, 88 (1968).

The sentence was harsh, but it was sustained by a review panel of three experienced trial judges with broader statutory sentence review authority than this Court can exercise. Although the battery did not cause physical injury to Officer Nelson, it was certainly loathsome, and it was obviously done to provoke Officer Nelson into entering Epps's cell so that a more violent attack would be possible. This was a serious battery and prisoners must be warned that repeated batteries on correctional officers will be dealt with severely. Correctional officers should be protected from all batteries by prisoners whether life threatening, injurious, or merely repulsive. Officer Nelson didn't know, when he was doused with this substance, and still doesn't know, if the fluid was "water" from Epps's toilet and/or whether it contained amounts of mucus, saliva, urine, or other noxious substances.

The majority opinion leaves several very important questions unanswered. Since Epps received a ten-year sentence for battery on a correctional officer less than two months before he committed this battery on a correctional officer, why does this not justify doubling his previous sentence for the same crime? A ten-year sentence was obviously not enough to deter Epps from continuing to assault correctional officers. On resentencing, what is the maximum sentence that the trial judge may now impose for this second attack on a correctional officer?

A twenty-year sentence for an intentional battery on a correctional officer by a recidivist inmate, who was previously sentenced to ten years for a prior battery on a correctional officer, should not be considered cruel and unusual punishment, regardless of how the battery was committed and regardless of the composition of the fluid thrown on the officer.

Judge RODOWSKY has authorized me to state that he joins in the views expressed in this dissenting opinion.